**FOURTH DIVISION**
**DOYLE, P. J.,**
**COOMER and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received*** **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**October 28, 2019**

# In the Court of Appeals of Georgia

A19A1108. VANTERPOOL v. PATTON.

COOMER, Judge.

In this paternity case, Joycelyn Vanterpool, M.D. ("Vanterpool"), appeals the trial court's order finding that she was estopped from claiming her ex-husband David Patton ("Patton") is the father of her child based on their prior divorce decree deeming that there were no children at issue of the marriage. For the following reasons, we affirm.

"We conduct a de novo review of a trial court's ruling on a motion to dismiss." *Daniel v. Fulton County*, 324 Ga. App. 865, 866 (752 SE2d 1) (2013) (citation omitted).

The record shows that Vanterpool and Patton married in 2010 and separated in August 2013. In January 2014, Patton filed for divorce. In her answer and

counterclaim, Vanterpool stated there were no children born or expected of the marriage. While the divorce was pending, the parties consented to Vanterpool undergoing an in vitro fertilization procedure ("IVF") using donor ova and donor sperm.[1] Vanterpool began receiving preparatory treatment for the IVF procedure in August 2014. On September 15, 2014, both parties signed an informed consent agreement with the IVF clinic that included standard, preprinted language stating that Patton would accept the newborn child as his own with all parental rights and responsibilities. On November 10, 2014, Vanterpool underwent the IVF procedure in the Czech Republic.

The trial court held a final hearing on the divorce complaint on November 14, 2014, at which only Patton and his attorney appeared. Later that day, the trial court entered a final judgment and decree of divorce, which had been signed and consented to by both parties, and which had been prepared by Patton's counsel. The divorce decree itself stated that there were no minor children born of or at issue in the marriage. It also incorporated the parties' settlement agreement, which stated that there were no children born as issue of the marriage, and that the parties desired that

---

[1] Patton has maintained that he consented to the IVF procedure under duress. Whether his consent was given voluntarily or under duress is not at issue in this appeal.

2

the agreement settle "all matters, questions, and controversies . . . of any nature whatsoever each may have against the other arising from the marital relationship." The terms of the agreement were reached at mediation on April 28, 2014; the agreement itself is dated October 21, 2014, and it shows that Vanterpool signed it on October 21, 2014, and that Patton signed it on July 2, 2014. Vanterpool did not appeal the divorce decree.

On June 6, 2015, just shy of seven months after the final divorce decree was entered, Vanterpool gave birth to twins as a result of the IVF procedure.[2]

Prior to the birth of the twins, in May 2015, Vanterpool filed a motion to set aside the divorce decree. She asserted that the decree was the result of fraud or mistake, as Patton was aware of her state of gestation when he presented the parties' mediated agreement to the trial court, and the trial court should not have granted the divorce as presented due to her state of gestation at the time of the final hearing.

At the hearing on the motion to set aside, Vanterpool testified that she told Patton she had undergone the IVF procedure prior to the entry of the divorce decree. Patton confirmed this in his testimony, but stated that he was not sure whether to believe Vanterpool at that time. Vanterpool also testified that she mentioned her plan

---

[2] One of the twins died shortly after birth.

to undergo IVF to her attorney during the divorce case, and she did not attend the final hearing because Patton told her not to go, and her attorney told her she did not need to appear. She further testified that her first "official" test, a serum test, confirming her pregnancy occurred on November 24, 2014. However, another reason she did not appear at the hearing was that she thought she was pregnant based on the results of a prior home pregnancy test. Vanterpool's counsel from the divorce case testified that he did not recall her telling him about her plan to undergo IVF during the case.

The trial court denied the motion to set aside. First, the trial court found that there was no evidence Patton committed fraud by proceeding with the divorce as scheduled on November 14, 2014, as there was no evidence that at the time of the final hearing he was aware Vanterpool was pregnant, and the parties did not mention children in their mediated agreement. Second, the trial court found that Vanterpool could not show Patton's actions were unmixed with her negligence or fault, as she failed to mention the IVF treatments to her counsel, there was no language addressing her IVF treatments in the settlement agreement, and the final hearing was scheduled at her request. Vanterpool did not appeal the denial of her motion to set aside.

4

In December 2015, Vanterpool filed this paternity action against Patton. Vanterpool filed a motion for summary judgment on the issue of paternity under § 19-7-21, which the trial court granted.[3] Patton appealed, and the Georgia Supreme Court reversed, holding that the irrebuttable presumption created with respect to children conceived by means of "artificial insemination" under § 19-7-21 does not extend to children conceived by IVF. *Patton v. Vanterpool*, 302 Ga. 253 (806 SE2d 493) (2017). The Supreme Court's decision left open the issue of whether Vanterpool "may establish legal paternity through other means, such as OCGA § 19-7-20."[4] Id. at 257 n. 7.

Following the Supreme Court opinion, back in the trial court, Patton filed a motion for summary judgment and motion to dismiss, arguing that Vanterpool was barred by collateral estoppel and res judicata from bringing her paternity claim because the issue of a child being born of the marriage had already been litigated during the divorce, and the trial court had issued a final order in the divorce action

---

[3] OCGA § 19-7-21 provides: "All children born within wedlock or within the usual period of gestation thereafter who have been conceived by means of artificial insemination are irrebuttably presumed legitimate if both spouses have consented in writing to the use and administration of artificial insemination."

[4] OCGA § 19-7-20 (a) provides that "[a]ll children born in wedlock or within the usual period of gestation thereafter are legitimate."

indicating there were no children born of the marriage. Vanterpool responded that any bar based on collateral estoppel or res judicata would violate OCGA § 19-7-20, as the statute would effectively have to be re-written if a mother could not establish the paternity of a child born within the usual period of gestation after the marriage simply because the divorce documents did not specifically provide for unborn children. She argued that the issues of paternity and custody were not addressed or litigated in the divorce case, and this was the first time paternity had been addressed.

The trial court granted Patton's motion, concluding that Vanterpool was estopped from proceeding on this paternity action because the issue had been previously litigated in the divorce proceeding. The trial court noted that Vanterpool's answer and counterclaim affirmatively stated there were no children born or expected of the marriage. The trial court also found that the IVF procedure occurred during the pendency of the divorce, Vanterpool had knowledge of her pregnancy at the time of the divorce proceeding, she requested the final hearing in the divorce case and was aware of the hearing. Finally, the trial court stated that there was no biological connection between Patton and the children.

Vanterpool then filed an application for discretionary review, which we granted. This appeal followed.

6

1. Vanterpool argues that the trial court erred by finding that res judicata barred her claim to establish paternity. We disagree.

OCGA § 9-12-40 provides that "[a] judgment of a court of competent jurisdiction shall be conclusive between the same parties and their privies as to all matters put in issue or which under the rules of law might have been put in issue in the cause wherein the judgment was rendered until the judgment is reversed or set aside." See *Waldroup v. Greene County Hosp. Auth.*, 265 Ga. 864, 865 (1) (463 SE2d 5) (1995) ("The doctrine of res judicata prevents the re-litigation of all claims which have already been adjudicated, or which could have been adjudicated, between identical parties or their privies in identical causes of action." (citations omitted)). "Three prerequisites must be satisfied before res judicata applies – (1) identity of the cause of action, (2) identity of the parties or their privies, and (3) previous adjudication on the merits by a court of competent jurisdiction." Id. at 866 (1) (citations omitted).

Here, the final judgment and decree of divorce included a finding of fact by the trial court that the parties had "no minor children born of or at issue in this marriage." We therefore find that the issue of paternity was effectively adjudicated in the divorce proceeding. Vanterpool relies on *Pike v. Armburst*, 117 Ga. App. 756, 757 (2) (161

7

SE2d 896) (1968). *Pike*, however, does not require a different result. In *Pike*, this Court held that res judicata did not bar a child from litigating the issue of her parentage. While the pleadings in the husband and wife's prior divorce action alleged that there were no children of the marriage, the final decree made no such finding or any provisions for a child. By contrast, in this case, a court of competent jurisdiction rendered a final judgment concluding that Vanterpool and Patton had no children born or at issue of their marriage. Therefore, res judicata prevents the same parties from litigating the same issue upon which a court has rendered a judgment. See *Brooks v. Lopez*, 350 Ga. App. 390, 392 (1) (829 SE2d 470) (2019) (where "previous divorce decree . . . recited that the 'parties shall share joint legal custody of the parties' minor child,' . . . the issue of the paternity of the minor child was effectively adjudicated in the prior divorce proceedings[.]" (citations omitted)); *Fleeman v. Dept. of Human Resources*, 208 Ga. App. 97, 97 (430 SE2d 135) (1993) (paternity claim barred where the court, in a prior divorce decree, "made a finding of fact that the parties had 'no minor children who are the issue of the marriage or the issue of the parties.'"), *overruled on other grounds by Dept. of Human Resources v. Fleeman*, 263 Ga. 756 (439 SE2d 474) (1994); *Macuch v. Pettey*, 170 Ga. App. 467, 468 (1) (317 SE2d 262) (1984) (res judicata barred re-litigating paternity where the divorce decree

8

"referred to "[the couple's]" minor child in delineating the rights and duties of the parties.").

2. Vanterpool next argues that the trial court erred in finding that collateral estoppel barred her paternity claim. We disagree.

> In Georgia, the collateral estoppel doctrine precludes the re-adjudication of an issue that has previously been litigated and adjudicated on the merits in another action between the same parties or their privies. Like res judicata, collateral estoppel requires the identity of the parties or their privies in both actions. However, unlike res judicata, collateral estoppel does not require identity of the claim — so long as the issue was determined in the previous action and there is identity of the parties, that issue may not be re-litigated, even as part of a different claim.

*Thomas County Bd. of Tax Assessors v. Thomasville Garden Center, Inc.*, 277 Ga. App. 591, 593 (2) (627 SE2d 192) (2006).

Based on our analysis in Division 1, collateral estoppel likewise precludes Vanterpool's paternity action. The same parties in a prior action (divorce) agreed that there were no children born of the marriage, and that finding was adopted by the trial court in a final order. That issue may not now be re-litigated in this proceeding. Moreover, "[p]arties to stipulations and agreements entered into in the course of

9

judicial proceedings are estopped from taking positions inconsistent therewith[.]" *Macuch*, 170 Ga. App. at 468 (1). Vanterpool's declaration in her answer to the divorce suit that there were "no children born or expected of [the] marriage" is inconsistent with her attempt to now legally establish that there were children born of the marriage. Thus, the preclusion doctrines apply to bar her paternity action.

3. Based on our holding that Vanterpool's claim is barred, we need not address her final enumeration in which she argues that the trial court erred in granting summary judgment to Patton.

*Judgment affirmed. Doyle, P. J., and Markle, J., concur*.